United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE GELLER, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>STEINY AND COMPANY INC,<br><br>　　　　Defendant. | Case No. 15-cv-01452-KAW<br><br>**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT; ORDER REASSIGNING CASE TO A DISTRICT JUDGE**<br><br>Re: Dkt. No. 22 |

　　　　On April 22, 2016, Plaintiffs filed a motion for default judgment against Defendant Steiny and Co., Inc., a California corporation, pursuant to section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (Plfs.' Mot., Dkt. No. 22.)  Plaintiffs' motion follows an entry of default by the clerk on December 28, 2015.  (Dkt. No. 14.)  Defendant has not appeared in this action, nor did it respond to Plaintiffs' Complaint or motion for default judgment.

　　　　On November 17, 2016, the Court held a hearing on Plaintiffs' motion for default judgment, at which Defendant did not appear.  Since Defendant, by the very virtue of being in default, has not consented to the undersigned, the Court reassigns this action to a district judge and recommends that Plaintiffs' motion be GRANTED IN PART AND DENIED IN PART.

## I.　INTRODUCTION

　　　　This action arises under ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").  Plaintiffs Mike Geller and Ronald Bennett, acting as Trustees of the International Brotherhood of Electrical Workers Local 302 Health and Welfare and Pension Trust Funds, filed this action to collect contributions from Defendant Steiny and Co.

Plaintiffs seek entry of default judgment against Defendant for unpaid contributions plus interest, liquidated damages, attorneys' fees, and costs as follows:

| | |
|---|---|
| Unpaid Contributions | $34,294.67 |
| 15% Liquidated Damages | $3,689.86 |
| 10% Interest | $530.91 |
| Attorneys' Fees | $9,213.75 |
| Costs | $555.00 |
| **TOTAL** | **$48,284.19** |

(Garcia Decl. ¶ 8, Dkt. No. 22-2, Exh. A at 2; Campbell Decl. ¶¶ 5, 6, Dkt. No. 22-3, Exh. D, E.)

## II.   BACKGROUND

Plaintiffs are trustees of the Health, Welfare and Employee Trust Funds for electrical workers, all of which are Taft-Hartley funds as described by 29 U.S.C. §186 and employee pension benefit plans as defined by 29 U.S.C. § 1002(1)(2). (Compl. ¶ 3, Dkt. No. 1.) Defendant is an employer under ERISA operating in Solano County, California. (*Id*. ¶ 4.) Defendant signed a Letter of Assent authorizing the Contra Costa Chapter of the National Electrical Contractors Association, Inc. ("CC NECA") as its bargaining representative to bind Defendant to the terms and conditions of the Inside Wireman Agreement ("CBA") between the International Brotherhood of Electrical Workers ("I.B.E.W.") Local 302 and the CC NECA. (Compl. ¶¶ 3-7; Hansen Decl. ¶¶ 1-4, Exhs. A, B.) The CBA covers wages, hours and working conditions of employment and requires Defendant to make payments, for each hour worked by their employees, to the I.B.E.W. Local 302 Health and Welfare and Pension Trust Funds, which include the following Plans: the Health and Welfare Trust, Retirement Trust Fund, the Electrical Industry Apprenticeship Trust Fund, the NLMCC Fund, Dues Check-Off Fund, the National Electrical Benefit Fund, and the NECA Dues Fund ("Trust Fund Plans"). (Compl. ¶¶ 6-7; Hansen Decl. ¶ 3, Dkt. No. 22-1, Exh. B.)

The Health and Welfare Plan is contractually authorized to collect the monies due the Trust

Fund Plans and provides for the Plan Administrator to prepare a Status Report on a delinquency, including the period of delinquency, the actual or estimated amount owed, liquidated damages, and interest and to include copies of any payroll reports submitted before or during the delinquency.  (Compl. ¶¶ 6-7; Hansen Decl. ¶ 8, Exh. D; Garcia Decl. ¶ 3, Exh. A.)

Pursuant to the CBA and the Trust Fund Plans, Defendant is required to submit to a depository, by the 15th day of each month following the month the work was performed, payment contributions to the Trust Funds Plans for each hour worked by its employees and is required to enumerate these hours and contributions in their monthly Transmittal Report Forms.  (Hansen Decl. ¶ 6, Exh. C at 4.)  Under the CBA and the Trust Fund Plans, employers who fail to make the required contributions are liable for the unpaid contributions owed; plus liquidated damages at the rate of 15% for contributions not postmarked by the 20th of the month following the month in which the work was performed; interest at the rate of 10% per annum, compounded, on the whole amount due, which includes the unpaid contributions plus liquidated damages; administrative costs; and attorney fees and court costs.  (Compl. ¶¶ 8-9; Hansen Decl. ¶¶ 9, 11, Exh. B at 34.)

Plaintiffs' Complaint and Motion sought unpaid contributions for the period December 2014 through February 2015 as follows: for December 20, 2014 in the amount of $8,845.05; for January 20, 2015 in the amount of $6,572.16; and for February 20, 2015 in the amount of $6,184.20 for a total of $20,773.37.  (Dkt. No. 1 ¶10; Garcia Decl. ¶ 4, Exh. A.)  Defendant subsequently paid the contributions for this period of December 2014 through February 2015, and the payments were applied to the liquidated damages first.  (Garcia Decl. ¶ 4, Exh. A.)  The Terms of Plan's Revised Delinquency and Collection Procedures permit the trustees to apply current and future principal payments to the liquidated damages first when an employer makes unpaid principal contributions payments.  (Hansen Decl., Exh. D at 3.)  It is the policy of the Fund Administrator to apply principal payments to liquidated damages first.  (Garcia Decl. ¶ 2.)  For this period covering December 2014 through February 2015, Defendant was assessed liquidated damages at the rate of 15% for all unpaid contributions not postmarked on the 20th day of the month following the month in which the work was performed and 10% interest per annum, compounded, on the whole amount due as follows: Liquidated Damages in the amount of

3

1  $5,012.76 and interest in the amount of $111.90.  (Compl. ¶¶ 8-10; Garcia Decl. ¶ 4, Exh. A.)

2  The Complaint put Defendant on notice that Plaintiff's intended to seek all unpaid
3  contributions, liquidated damages and interest as follows, "[O]n information and belief, additional
4  monies are due for the periods March 1, 2015 to the present" and continues as follows: "[T]he
5  obligation of said Defendants, pursuant to the collective bargaining agreement set forth in
6  paragraph 7 above is a continuing obligation; Defendants may be continuing to breach said
7  agreement by failure to pay monies due thereunder to Plaintiffs.  The additional sums still due and
8  owing, because of said breach, are presently unknown, but will be determined hereafter."  (Compl.
9  ¶¶ 12-13.)  Plaintiffs' Complaint also included language that they be allowed to recover reasonable
10 attorney fees and court costs and amend the Complaint should it be deemed necessary by the court
11 to recover any and all additional sums due.  (*Id.* ¶ 9, 13.)

12 From March 2015 through March 2016, Defendant was delinquent each and every month
13 in the payment of contributions as detailed in the Steiny Status Report and in Defendant's own
14 monthly submitted Transmittal Reports showing employee hours and the dates the amounts were
15 paid by Defendant.  (Garcia Decl. ¶ 5, Exh. A, C.)  For the period covering March 20, 2015
16 through March 15, 2016, Defendant was assessed liquidated damages at the rate of 15% for all
17 unpaid contributions not postmarked on the 20th day of the month following the month in which
18 the work was performed and 10% interest, compounded, on the whole amount due as follows:
19 Payments made by Defendant were applied first to the due and owing unpaid liquidated damages
20 balance and then to unpaid contributions leaving an unpaid contribution balance of $2,060.28 and
21 interest on this amount of $16.24.  (*Id.*)

22 Defendant made two contribution payments as follows: On July 26, 2016 in the amount of
23 $3,357.07 and on August 25, 2016 in the amount of $808.53.  (Garcia Decl. ¶ 6; Exh. A.)
24 Payments made by Defendant were applied first to the due and owing unpaid liquidated damages
25 balance and then to unpaid contributions leaving an unpaid contribution balance of $9,616.66;
26 interest on this amount of $78.90, for a total for this period of $9,695.56.  (*Id.*)

27 Plaintiffs further allege in their Motion that for the pay period of April 15, 2016 through
28 August 15, 2016, and pursuant to Defendant's own Transmittal Reports, Defendant failed to make

4

1   the monthly payment Trust Fund Plans contributions as follows: For April 15, 2016 contributions
2   in the amount of $10,178.82; for May 15, 2016 contributions in the amount of $10,061.57; for
3   June 15, 2016 contributions in the amount of $10,372.04; for July 15, 2016 contributions in the
4   amount of $3,357.07; and for August 15, 2016 contributions in the amount of $808.43. The total
5   unpaid contributions due and owing for the May 2016 through August 2016[1] contributions are
6   $24,599.11.  (Garcia Decl. ¶ 6, Exhs. A, D, E.)  For this period covering April 15, 2016 through
7   August 15, 2016, Plaintiffs assessed liquidated damages at the rate of 15% for all unpaid
8   contributions not postmarked on the 20th day of the month following the month in which the work
9   was performed and 10% interest, compounded, on the whole amount due as follows: liquidated
10  damages in the amount of $3,389.86 and interest in the amount of $530.91.  (Garcia Decl. ¶ 6,
11  Exh. A.)
12      In their motion for default, Plaintiffs seek a total amount of damages as follows:
13  $34,294.67 ($9,695.66 + $24,599.11) in unpaid contributions, $3,689.86 in liquidated damages at
14  15% pursuant to the contract; $530.91 in interest at 10% pursuant to the contract; $9,213.75 in
15  attorney fees; and costs of $555.00.  (Plfs.' Mot. at 6.)

### III.   LEGAL STANDARD

17  Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant,
18  to enter default judgment in a case.  "The district court's decision whether to enter default
19  judgment is a discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).  In
20  determining whether default judgment is appropriate, the Ninth Circuit has enumerated the
21  following factors for the court to consider:  (1) the possibility of prejudice to the plaintiff; (2) the
22  merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money
23  at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default
24  was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

---

[1] Plaintiff states that the total unpaid contributions for the period of April 15, 2016 through August 15, 2016 is $24,599.11.  The total amount for this five-month period would actually be $34,777.93.  The difference between these numbers is the April 15, 2016 contribution of $10,178.82.  This $10,178.82 figure is encompassed in the $9,695.56 amount following the July and August 2016 payments. (Garcia Decl., Exh. A at 2.)

5

Procedure favoring decisions on the merits. *Eitel v McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986). Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987).

## IV. DISCUSSION

### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties in the case. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999) ("When an entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties").

#### i. Subject Matter Jurisdiction

This is a civil action brought by the fiduciary trustees alleging a violation of ERISA, a federal statue. 29 U.S.C. § 1132(a)(3) authorizes a civil action to be brought "by a[n] [ERISA] participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1144(a)(2) contains broad preemptive language superseding "any and all State laws" relating to employee benefit plans within the coverage of the statute. Plaintiffs' fiduciaries seek damages pursuant to 29 U.S.C. § 1132(g)(2) and 29 U.S.C. § 1145. Therefore, a federal question is presented to the Court.

#### ii. Personal Jurisdiction

The Court has personal jurisdiction over Defendant because it is a business in Vallejo, California. Under Federal Rule of Civil Procedure 55(b), the Court may only enter default judgment against a minor or incompetent person only if represented by a general guardian,

1  conservator or other like fiduciary who has appeared.  As a business, Defendant is neither a minor
2  nor an incompetent person and therefore the Court can issue default judgment.

### iii. Service of Process

When entry of default judgment is requested, the Court must determine whether service of process was adequate. *Bank of the West v. RMA Lumber Inc.,* No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008).  A party may serve a corporation "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1); see also Fed. R. Civ. P. 4(h)(1)(A) (authorizing service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual").  Under California law, a summons can be served on a corporation by delivering a copy of the summons and complaint to the person designated as the agent for service of process.  Here, Defendant was properly served by delivering a copy of the Summons and Complaint to Susan Steiny, the person designated by Defendant as its agent for service of process, on May 14, 2015.  (Dkt. No. 8.)  The Clerk subsequently filed an entry of default as to Defendant.  (Dkt. No. 14.)

### B. *Eitel* Factors

#### i. First Factor: Possibility of Prejudice to Plaintiffs

Taking all of the factual allegations in the Complaint as true, the first *Eitel* factor weighs in favor of granting default judgment on Plaintiffs claims.  "Because ERISA provides that federal courts have exclusive jurisdiction for claims of this nature, denial of Plaintiffs' Motion would leave them without a remedy." *Bd. of Trs. of U.A. Local No. 159 Health and Welfare Trust Fund v. RT/DT, Inc.*, No. 12-cv-05111 JSW, 2013 WL 2237871, at *4-5 (N.D. Cal. May 21, 2013).  Accordingly, the first *Eitel* Factor weighs in favor of granting a default judgment.

#### ii. Second and Third Factors: Merits of Plaintiffs' Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors address the merits and sufficiency of Plaintiffs' claims pled in the Complaint.  "These two factors are often analyzed together." *Guifi Li v. A Perfect Day Franchise, Inc*. No. 5:10-cv-01189 LHK, 2012 WL 2236752, at *6 (N.D. Cal. June 15, 2012).  In

7

considering the second and third factors, the Court takes all factual allegations in Plaintiffs' Complaint as true, except for those relating to damages. *Televideo Systems*, 826 F. 2d at 917-18.

Plaintiffs' claim is for employee benefits due under ERISA, which provides that: "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA creates a federal cause of action against employers who do not make timely contributions to employee benefit plans, and allows plan fiduciaries to enforce obligations created under the collective bargaining agreement. *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.,* 572 F.3d 771, 776 (9th Cir. 2009).

Plaintiffs' Complaint states that Defendant entered into a collective bargaining agreement that required it to "make payments to certain Funds (Health and Welfare and Trust Fund, Retirement Trust Fund, the Electrical Industry Apprenticeship Trust Fund, NLMCC Fund, Dues Check- Off, the NLMCC Fund, National Electrical Benefit Fund, and NECA Dues Fund) for each hour worked by employees covered by said collective bargaining agreement." (Compl. ¶¶ 5-6.) Plaintiffs attached a copy of the signed collective bargaining agreement and stated why Defendant was obligated to pay liquidated damages and interest as well as contributions for the months missed. (Compl. ¶¶ 6-9; Hansen Decl., Exh. A.)

The Complaint further states that Defendant owes Plaintiffs "for the months of December 2014- February 2015 in the amount of $20,773.37, plus liquidated damages for the months of December 2014 - February 2015 according to contract; plus interest thereon at the legal rate." (Compl. ¶ 10.) The Complaint put Defendant on notice that Plaintiffs intended to seek all unpaid contributions, liquidated damages and interest as follows, "On information and belief, additional monies are due for the periods March 1, 2015 to the present" and continues as follows "The obligation of the said Defendants, pursuant to the collective bargaining agreement set forth in paragraph 7 above is a continuing obligation; Defendants may be continuing to breach said agreement by failure to pay monies due thereunder to Plaintiffs. The additional sums still due and owing, because of said breach, are presently unknown, but will be determined hereafter." (Compl.

8

1  ¶¶ 12-13.)  Plaintiffs further alleged in the Prayer that monies are due to Plaintiffs from March 1,
2  2015 through the date of judgment, pursuant to 29 U.S.C. Section 1132 (g)(2).  (Compl. at 4.)
3  Plaintiffs have provided evidence of the amounts due and Defendant's failure to pay.  (Garcia
4  Decl., Exhs. A-E.)

5  Courts permit the recovery of damages incurred after the initiation of an action because
6  "plaintiffs 'need not amend or supplement their pleadings in order to seek damages, including
7  liquidated damages, related to contributions coming due post-filing.'"  *Trs. of the Teamsters Union*
8  *Local No. 142 Pension Trust Fund v. McAllister, Inc.* 602 F. Supp. 2d 948, 958 (2009) (quoting
9  *Trs. of the Minn. Ceramic Tile & Allied Trades Ret. Fund v. Legacy Tile & Marble, Inc.*, No. CIV
10  06-2965 (JNE/SRN), 2008 WL 624120, at *5 (D. Minn. Mar. 4, 2008) (permitting recovery of
11  contributions owed, liquidated damages and interest for amounts that became delinquent after the
12  complaint was filed through and including the date of judgment); *see also Bd. of Trs./Sheet Metal*
13  *Workers v. General Facilities, Inc.*, No. C-02-4663 CRB, 2003 WL 1790837, at *2 (N.D. Cal.
14  Mar. 31, 2003) (awarding liquidated damages and interest for contributions that became
15  delinquent after the lawsuit was filed but have since been paid).

16  The Complaint explicitly contemplates that Plaintiffs would seek to amend their pleading
17  to account for additional damages incurred after the filing of the Complaint in March 2015.
18  (Compl. ¶¶ 12-13.)  Although Plaintiffs have not actually sought leave to amend, courts often
19  allow damages incurred after the initiation of an action to be included in a default judgment.
20  Courts have found that allowing plaintiffs to recover contributions that became due after the
21  lawsuit was filed, and which remained unpaid at time of judgment, is in accord with congressional
22  intent.  Otherwise, "requiring Plaintiffs to file amended complaints, or separate suits, to recover
23  unpaid contributions when they become due during the pendency of the instant suit would
24  frustrate ERISA's purpose." *McAllister*, 602 F. Supp. 2d at 959; *see also Bd. of Trs. of the Sheet*
25  *Metal Worker's Health Care Tr. of N. Cal. v. B.D. Bridon, Inc*.. No. C-95-1240 MHP, 1995 WL
26  573701, at *3-4 (N.D. Cal. Sept. 19, 1995) (same).

27  Taking into account that the Complaint put Defendant on notice of Plaintiffs' intent to
28  amend to seek additional damages, Plaintiffs' evidence demonstrating their right to recover for

those months, and Plaintiffs' service of their present Motion seeking damages for those months on Defendant, the Court concludes that requiring a formal amendment of the Complaint to add the additional amounts for the subsequent months after the filing of the Complaint would not serve any practical purpose.

Taking the allegations in the Complaint as true, Plaintiffs have successfully pled a case under ERISA entitling them to contributions. Therefore the second and third *Eitel* factors weigh in favor of granting their motion for default judgment.

### iii. Fourth Factor: Sum of Money at Stake in This Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of Defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Default judgment is disfavored when the amount at stake is substantial or unreasonable in light of the allegations in the complaint. *See Eitel*, 782 F.2d at 1472 (affirming denial of default judgment where the Plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

In their motion for default judgment, Plaintiffs seek: (1) unpaid contributions in the amount $34,294.67; (2) liquidated damages at the rate of 15% for contributions not postmarked by the 20th of the month following the month in which the work was performed, in the amount of $3,689.86; (3) interest at the rate of 10% per annum for contributions not postmarked by the 20th of the month following the month in which the work was performed in the amount of $530.91; (4) attorney fees in the amount of $9,213.75; and (5) court costs in the amount of $555.00, for a total of $48,284.19. (Plfs.' Mot. at 7.) As discussed below, Plaintiffs are for the most part entitled to these amounts, which are supported by documentation.

### iv. Fifth Factor: Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute concerning material facts in the case. *Eitel*, 782 F 2d. at 1471-72. Upon entry of default, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint. *DirectTV v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)).

Defendant had the opportunity to respond to the Complaint and participate in these proceedings.  On May 14, 2015, Plaintiffs served Susan Steiny, Defendant's registered agent, with copies of the Summons and Complaint.  (Dkt. No. 8.)  Plaintiffs' claims for unpaid contributions and liquidated damages are readily ascertainable based on Defendant's own monthly Transmittal Reports of hours worked.  (Garcia Decl., Exhs. B-E.)

Because "Defendants' obligations under the collective bargaining agreement are clear, the possibility for any factual dispute is unlikely." *Bd. of Trs. of U.A. Local No. 159 Health & Welfare Trust Fund v. RT/DT, Inc*., No. 12-cv-05111 JSW, 2013 WL 2237871, at *4-5 (N.D. Cal. May 21, 2013); *see also General Facilities, Inc*., 2003 WL 1790837, at *3.  Therefore, this factor weighs in favor of default judgment.

### v. Sixth Factor: Whether Default was a Result of Excusable Neglect

The sixth *Eitel* factor examines whether Defendant's failure to respond to Plaintiffs' Complaint was due to excusable neglect.  *Eitel*, 782 F. 2d at 1471-72.  Plaintiffs properly served Steiny with the Summons and Complaint on May 14, 2015.  (Dkt. No. 8.)  Defendant was served with the Request for Entry of Default on December 22, 2015.  (Campbell Decl., Exh. B.) Plaintiffs served Defendant with notice of the present Motion for Default Judgment by mail on October 6, 2016, as well as the undersigned's order requiring Plaintiffs to file a proposed order if Defendant failed to file a timely opposition.  (Dkt. Nos. 22-5, 24.)  Defendant has made no appearance in this case and has not responded to Plaintiffs motion.  Plaintiffs have properly served Defendant with all relevant pleadings to Plaintiffs cause of action and the relief sought and there is no evidence that Defendant's failure to appear and litigate this case is based on excusable neglect. *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

As such, this factor weighs in favor of granting default judgment.

### vi. Seventh Factor: Policy Favoring a Decision on the Merits

In *Eitel*, the Ninth Circuit stated that "[c]ases should be decided on the merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  The courts have recognized, however, that "this preference, standing alone, is not dispositive." *PepsiCo, Inc*., 238 F. Supp. 2d. at 1177 (internal quotation omitted).  The existence of Federal Rule of Civil Procedure 55(b) indicates that the

"termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id.* Defendant has never participated in the proceedings and so a decision on the merits would not otherwise be possible. In this situation, Rule 55(b) permits the court to grant default judgment.

After an examination of these factors in the aggregate, the Court finds that *Eitel* factors one through six outweigh the preference for a decision on the merits. The undersigned therefore recommends the entry of default judgment.

### C.   Damages

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

Again, Plaintiffs in this case seek a total sum of $48,284.19, comprised of: (1) unpaid contributions in the amount of $34,294.67, (2) liquidated damages in the amount of $3,689.86, (3) interest in the amount of $530.91, (4) attorney's fees in the amount of $9,213.75, and (5) costs in the amount of $555.00.

          a.   Unpaid Contributions, Liquidated Damages, and Interest

This amount is authorized under both the CBA attached to the Complaint and pursuant to 29 U.S.C. §1132(g)(2)(A)-(E), which authorizes the collection of unpaid contributions, liquidated damages and interest. (Compl. ¶ 9; Hansen Decl., Exh. A.) This amount is "proportionate and appropriately tailored to Defendant's misconduct" in failing to make timely contribution payments. *See Bd. of Trs. of the Sheet Metal Workers v. Accu-Balance Assocs., Inc.*, No. 05-3470 SC, 2006 WL 3591141, at *1 (N.D. Cal. Decl. 11, 2006). The Court takes all factual allegations in Plaintiffs' Complaint as true, except for those relating to damages. *Televideo*, 826 F 2d. at 917-18. The Complaint alleges that, because of Defendant's misconduct, the Funds "have suffered, and will continue to suffer, harm and actual and impending irreparable loss in that monies will not

United States District Court
Northern District of California

be available to provide contractual benefits to participants and beneficiaries of the Funds; the Funds will suffer excessive administrative and legal costs in continuing attempts to collect monies not submitted on a timely basis; the Funds will not have the benefit of investment income on monies due to the funds for these Defendants; and individual participants in the Fund will not receive their contractual benefits."  (Compl. ¶ 15.)

Attached to Plaintiffs' Motion for default judgment is a declaration by Anthony Garcia, the Plan Manager with BeneSys Administrators for the IBEW Local 302 Trust Funds.  (Garcia Decl. ¶ 1.)  Mr. Garcia is responsible for processing transmittals and payments received by employers for payment into the Funds that Plaintiffs represent as fiduciaries in this matter.  (*Id.* ¶¶ 1-2.)  Defendant's transmittals, attached to Mr. Garcia's declaration, show the breakdown of the hours worked by the covered employees.  (*Id.* ¶¶ 3-7, Exhs. A-E.)  Garcia's Status Report, attached to his declaration, provides a detailed breakdown of the delinquent contributions, the liquidated damages and the daily interest owed.  (*Id.*, Exh. A.)  The Court has reviewed the Steiny Status Report, and finds that it is consistent with the Monthly Fringe Benefit Transmittals attached to the Garcia Declaration.  (*Id.*, Exhs. A-E.)  Anthony Garcia's Declaration, together with the detailed Status Report, show why the damages that Plaintiffs seek are appropriate.  Thus, the Court recommends awarding Plaintiffs $38,515.44 in unpaid contributions, liquidated damages, and interest.

        b.   Attorney's Fees

Attorney's fees incurred in actions brought to recover unpaid contributions are available under 29 U.S.C. § 1132(g)(2)(D).  Federal courts have adopted the lodestar method for calculating the amount of reasonable attorney fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate.  *Id*.  To determine whether Plaintiffs' claimed hours are reasonable, the Court must review an attorney's time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients.  *Id*. at 434.  The Court must assess whether the hours claimed are vague, block-billed, excessive and/or duplicate, or whether the hours in their entirety must be reduced because of limited success in the action.  See *Navarro v. General*

*Nutrition Corp.*, No. C 03-603 SBA, 2005 WL 2333803, at *4 (N.D. Cal. Sept. 22, 2005). Decisions by other courts regarding reasonableness of the rate sought may be provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that rate based in part on the rate awarded to same attorney in another case was reasonable).

Plaintiffs submitted a declaration by their counsel Sue Campbell detailing her time spent seeking to recover the contributions at issue and the associated liquidated damages and interest and damages. (Campbell Decl., Exhs. D, E.) Plaintiffs seek $6,337.50 in attorney's fees for 32.50 hours of work at the rate of $195.00 per hour for the work leading to but excluding the Motion for Default Judgment. (*Id* ¶¶ 5-7, Exhs. D, E.) Campbell states that she spent 14.75 hours ($2,876.25) preparing and filing the present Motion. (*Id.*, Exh. D.) Campbell details her time on the case in billing records broken down in 0.05-hour intervals. (*Id.*)

The Court finds that Campbell's billing records are, for the most part, reasonable. Campbell's billing rate of $195 per hour falls below, and therefore well within, the range that courts have approved in similar cases. *Bd. of Trs. of Boilermaker Vacation Trust v. Skelly Inc.*, 389 F. Supp. 2d 1222, 1227-28 (N.D. Cal. 2005) (finding hourly rates of $210 and $345 to be reasonable). Moreover, other Courts in this district have approved Campbell's $195 billing rate. *See N. Cal.-N. Nev. Sound & Commc'ns Emp. Ben. Trust Funds v. Spartan Eng'g, Inc.*, No. C08-00537 RMW, 2008 WL 2951905, at *3 (N.D. Cal. July 28, 2008) (finding Campbell's $195 hourly rate to be reasonable). For the period of May 5, 2015 to June 30, 2015, however, Campbell's time records show only $555.75 in work performed, not $1,725.75.[2] Following the hearing, Campbell submitted a declaration confirming that $555.75 was the correct figure. (Supp. Campbell Decl. ¶ 4, Dkt. No. 30.) Thus, the Court recommends awarding Plaintiffs attorney's fees of $8,043.75.

///

///

---

[2] While the billing record states a total of $1,725.75 in total professional services was rendered, the billing record only lists entries totaling 2.85 hours and $555.75 in professional services attributable to the instant case. (Campbell Decl., Exh. D at 3.)

14

c. Costs

Plaintiffs seek $555 in costs. Campbell's billing records reflect Plaintiffs paid $400 toward a filing fee and $155.00 toward service of process. (Campbell Decl., Exh. D.) ERISA authorizes an award of reasonable costs in an action to recover unpaid contributions. 29 U.S.C. §1132 (g)(2)(D).

Civil Local Rule 54-3(a) (1) provides that an award of the clerks filing fee is "allowable if paid by claimant." The docket and the evidence that Plaintiffs have submitted reflect that the filing fee was paid. Plaintiffs' costs for service of process are also reasonable and courts have routinely awarded costs for service in actions brought under 29 U.S.C. §1132 (g)(2)(D). *See e.g. Central. Cal. IBEW/NECA Pension Trust v. Ozzimo Electric, Inc*., No. C-13-03800 JSW, 2014 WL 1245059, at *5 (N.D. Cal. March 25, 2014).

In light of the foregoing, the undersigned recommends that the district court award costs in the amount of $555.

## V. CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiffs' motion for default judgment against Defendant Steiny and Company be GRANTED IN PART AND DENIED IN PART. Plaintiffs should be awarded:

(1) unpaid contributions in the amount of $34,294.67;

(2) liquidated damages in the amount of $3,689.86;

(3) interest in the amount of $530.91;

(4) reasonable attorney's fees in the amount of $8,043.75; and

(5) costs in the amount of $555.

Any party may file objections to this report and recommendation with the district judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

///

1    Plaintiffs shall serve a copy of this report and recommendation on Defendant.

2    IT IS SO RECOMMENDED.

3    Dated: November 29, 2016

_____
KANDIS A. WESTMORE
United States Magistrate Judge